*Decisions will be entered under Rule 50.*

ESTATE OF RITNER K. WALLING, DECEASED, MARGARET C. WALLING, RITNER E. WALLING AND J. WESLEY MCWILLIAMS, EXECUTORS, AND MARGARET C. WALLING, SURVIVING WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4274–62. Filed October 25, 1965.

*David P. Brown, Jr.*, and *George Chimples*, for the petitioners.
*Stephen P. Cadden*, for the respondent.

**OPINION**

Raum, *Judge:* The sole question for decision is whether the amounts totaling $57,567, expended by the Oliver Transportation Co. during the year 1957 represented deductible ordinary and necessary business expenses or nondeductible capital expenditures.

Section 162 of the Internal Revenue Code of 1954 provides, in pertinent part, that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Petitioners contend that the expenditures involved qualify for deduction under this section. They

argue that the work done on the *Darien* and *Mamei* in 1957 was typical of the items of repair required at least annually to maintain them in seagoing condition and to obtain new Coast Guard and loadline certificates; that the purpose of the repairs was only to restore the wear and tear on the vessels which had occurred since their last annual visit to the shipyard; that the repairs consisted of "patching-up" work which did not lengthen the lives of the vessels; that amounts expended for such repairs are normally considered to be ordinary and necessary business expenses deductible from gross income under section 162; and that their deduction should not be denied merely because the repairs were incidental to the transfer of the vessels to the Oliver Transportation Corp.

We agree with petitioners that expenditures for work similar to that done on the *Darien* and *Mamei* in 1957 would normally be considered to be ordinary and necessary business expenses if incidental to the operation and maintenance of those vessels for business purposes. However, the 1957 expenditures do not fall in that category. These vessels were not used nor were they intended to be used by the taxpayers after the repairs "in carrying on any trade or business." The repairs were made in June and July of 1957, but the Wallings on May 29, 1957, had already transferred the *Mamei* and the *Darien* to the Oliver Transportation Corp., and the expenditures in question were made in order to fulfill one of the conditions of the contract of sale or transfer. They were thus incidental to that transfer and were therefore capital in nature. In the contract of sale bearing that date the Wallings assigned and transferred to the corporation all of their right, title, and interest in the *Darien* and *Mamei* free and clear of any encumbrances "and in a seagoing and operational condition with current Coast Guard and American Bureau of Shipping Load Line certificates" in exchange for 6,000 shares of the capital stock of the corporation. Before "current" Coast Guard and American Bureau of Shipping certificates would be issued certain work had to be done on the vessels. This work consisted principally of painting, checking the ship bottoms and sea valves, and repairing damage that had occurred to the vessels since their last visit to the shipyard. When it was completed current certificates were issued indicating that the vessels were in a seagoing and operational condition satisfactory to the Coast Guard and American Bureau of Shipping. The company was then able to comply with the terms of the May 29, 1957, contract providing for the transfer of the vessels to the corporation in a seagoing and operational condition with "current" Coast Guard and loadline certificates in exchange for 6,000 shares of the corporation's stock. The expenditures made by it to put the vessels in that condition clearly represented part of the cost of acquiring the stock. In the circum-

stances the respondent's determination that they were capital expenditures, and not deductible as ordinary and necessary business expenses, must be, and is, approved.[2] Cf. *Bloomfield Steamship Co.*, 33 T.C. 75, affirmed 285 F. 2d 431 (C.A. 5).

*Chickasha Cotton Oil Co.*, 18 B.T.A. 1144, relied upon by petitioners, does not require a contrary result. Apart from the fact that the meager findings of fact and opinion as they relate to this issue make it difficult to determine precisely what was decided in that case, it appears that there was involved at most the question whether the cost of replacements incurred by the taxpayer under an apparent warranty in connection with certain cotton gins which it had previously sold had already been reflected in the computation of its taxable income. And it was held at most in that case that the taxpayer had not already had the benefit of the resulting loss in the determination of its taxable income. No question appears to have been raised there as to whether the expenditures constituted ordinary and necessary expenses or as to whether the concededly allowable loss stemming from those expenditures was to be treated as an ordinary or as a capital loss.[3] In the present case the expenditures at issue were made in connection with an exchange in which petitioners acquired stock for the two vessels; those expenditures in the circumstances herein represented part of the cost of acquiring that stock and became part of its basis for gain or loss on any subsequent sale or other taxable disposition of that stock. It is only at such time that tax benefit may be obtained in respect of these capital expenditures. *Chickasha Cotton Oil* is in no way in conflict with this result.

*Decision will be entered for the respondent.*

---

[2] This conclusion is confirmed by the practical consequences resulting therefrom. Suppose a taxpayer had property requiring $100,000 repairs which he could sell for $900,000 "as is." If he should contract to sell it, agreeing to make the repairs himself prior to transferring title, one would expect that in the normal course the parties would negotiate a sales price of $1 million. The $100,000 paid out by the owner for such repairs would be treated as capital expenditures and would be reflected in the computation of his gain or loss upon the sale. His actual gain or loss would thus remain the same, and he would obtain appropriate tax benefit for such expenditures made in connection with that capital transaction. But if he were allowed to deduct those expenditures from ordinary income as business expenses, there would be a distortion that Congress plainly could not have intended, for the $100,000 increase in sales price would be accorded the favorable capital gains treatment whereas the $100,000 deduction from ordinary income would result in a net unintended tax benefit growing out of the transaction as a whole.

We note, of course, that the gain on the transfer of the two vessels herein was treated as nonrecognizable, but petitioners have not made any argument based upon this consideration. The point in this respect is that the expenditures represent an addition to basis that will ultimately be reflected upon any subsequent sale or other taxable disposition.

[3] Indeed, in view of the fact that the taxpayer was a corporation, nothing turned upon whether the loss was a capital loss, since under the applicable statute at that time capital gains and losses of corporations were treated in the same manner as ordinary gains and losses. And even as to individual taxpayers, limitation upon deductions of capital losses did not appear in the law until the Revenue Act of 1924, after the years involved in the *Chickasha* case.